**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER E. BERRY, | Case No. 1:12-cv-00901-BAM-HC |
| Petitioner, | ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DENYING PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING (DOC. 1), AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT |
| v. | |
| McDONALD, Warden, | ORDER DISMISSING PETITIONER'S MOTION FOR A RULING AS MOOT (DOC. 27) |
| Respondent. | |
| | ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on May 31, 2012, and on behalf of Respondent on September 26, 2012. Pending before the Court is the petition for writ of habeas corpus, which was filed on May 18, 2012, and transferred to this Court on

1

June 1, 2012.  Respondent filed an answer on October 4, 2012, and Petitioner filed a traverse on October 26, 2012.  A supplemental answer was filed on November 24, 2014, and a supplemental traverse on January 13, 2015.

I.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Stanislaus (SCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes that it has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Warden Mike McDonald, who, pursuant to the judgment, had custody of Petitioner at his institution of confinement at the time the petition and answer were filed.  (Doc. 18.)  Petitioner thus named as a

2

respondent a person who had custody of Petitioner within the meaning

of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section

2254 Cases in the District Courts (Habeas Rules).   See, <u>Stanley v.</u>

<u>California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, the Court concludes that it has jurisdiction over

the person of the Respondent.

II.   <u>Background</u>

On July 9, 2009, Petitioner was convicted by jury trial in the

SCSC of feloniously inflicting cruel corporal punishment and injury

on a thirteen-year-old child in violation of Cal. Pen. Code

§ 273d(a).   In a bifurcated proceeding on July 10, 2009, the trial

court found true allegations that Petitioner had a prior serious

felony conviction for attempted robbery within the meaning of Cal.

Pen. Code §§ 664, 211, and 667(d).   The court also found true a

prior prison term enhancement within the meaning of Cal. Pen. Code

§ 667.5(b).   On December 3, 2009, the court sentenced Petitioner to

prison for the middle term of four years, doubled that term to eight

years pursuant to the Three Strikes Law, and added a consecutive

term of one year for the prior prison term enhancement.

Petitioner's total sentence was nine years.   (Amended ans., exh. A,

doc. 19-1, 3.)

Petitioner appealed the judgment, but his conviction was

affirmed, and numerous petitions for habeas corpus relief filed in

the state courts were denied.

On June 5, 2012, this Court dismissed without leave to amend

Petitioner's state claims, including his challenges to the adequacy

of his counsel's assistance based on the California constitution;

his contention that the state court erred in its application of the

state sentencing laws because Petitioner actually had only one prior "strike" with a current conviction for a non-violent, non-serious offense, which did not warrant a doubled term; a challenge to the authenticity of photographs that had been considered in proceedings in the trial court, which constituted a claim of error concerning the trial court's ruling on a state law issue of authentication of evidence; and a claim of bias of a state court judge in state collateral review proceedings (as distinct from his claim of a biased tribunal during trial court proceedings).   (Doc. 8.)

    II.   Standard of Decision and Scope of Review

    Title 28 U.S.C. § 2254 provides in pertinent part:

    (d) An application for a writ of habeas corpus on
    behalf of a person in custody pursuant to the
    judgment of a State court shall not be granted
    with respect to any claim that was adjudicated
    on the merits in State court proceedings unless
    the adjudication of the claim—

    (1) resulted in a decision that was contrary to,
    or involved an unreasonable application of, clearly
    established Federal law, as determined by the
    Supreme Court of the United States; or

    (2) resulted in a decision that was based on an
    unreasonable determination of the facts in light
    of the evidence presented in the State court
    proceeding.

    Clearly established federal law refers to the holdings, as distinct from the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.   Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

4

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002). A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407. An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable. Id. In order to obtain federal habeas

5

relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398. Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, -- U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400.

Title 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision that was on the merits and

was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  For relief to be granted, a federal habeas court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient. <u>Rice v. Collins</u>, 546 U.S. 333, 340-42 (2006).

To conclude that a state court finding is unsupported by substantial evidence, a federal habeas court must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004).  To determine that a state court's fact finding process is defective in some material way or non-existent, a federal habeas court must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact finding process was adequate. <u>Id.</u> at 1000.

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d). <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

1    rejecting the same claim are presumed to rest upon the same ground.

2    Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

3        Where the state court decides an issue on the merits, but its

4    decision is unaccompanied by an explanation, a habeas petitioner's

5    burden must be met by showing that here was no reasonable basis for

6    the state court to deny relief.  Harrington v. Richter, 131 S.Ct.

7    770, 784.  In such circumstances, this Court should perform an

8    independent review of the record to ascertain whether the state

9    court decision was objectively unreasonable.  Medley v. Runnels, 506

10   F.3d 857, 863 n.3 (9th Cir. 2007), cert. denied, 552 U.S. 1316

11   (2008); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

12   Independent review is not the equivalent of de novo review; rather,

13   the Court must still defer to the state court's ultimate decision.

14   Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

15       However, the deferential standard of § 2254(d) applies only to

16   claims that have been resolved on the merits by the state court.  If

17   a claim was not decided on the merits, then this Court must review

18   it de novo.  Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004);

19   Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).  The deferential

20   standard of § 2254(d) sets a substantially higher threshold for

21   relief than does the standard of de novo review, which requires

22   relief for an incorrect or erroneous application of federal law.

23   Renico v. Lett, 559 U.S. 766, 773 (2010).

24       III.  Biased Tribunal

25       Petitioner alleges that he suffered a denial of his rights to

26   due process and a fundamentally fair trial because of the absence of

27   an impartial tribunal.  Petitioner alleges that the trial judge was

28   biased because he denied Petitioner's habeas corpus petition even

8

though an unspecified pleading contained accusations that the same judge was guilty of bias and prejudice; ordered Petitioner to pay $1500.00 in restitution without holding a hearing on ability to pay (which was reversed on appeal); and denied Petitioner's motions to set aside the verdict, for a new trial, to strike a prior conviction pursuant to Cal. Pen. Code § 667(d), to substitute counsel, and for bail pending appeal.  Petitioner further alleges that the trial court had concluded that Petitioner was dangerous and thus prejudged the issue of bail.  (Doc. 1 at 18.)

A. <u>Procedural Default</u>

Respondent contends that this Court should not review Petitioner's bias claim because of Petitioner's procedural default in the state court.[1]  Respondent argues that the state court's reliance on the successive nature of Petitioner's applications in post-conviction collateral proceedings constitutes an independent and adequate state ground for denying Petitioner's claim and thus precludes review by this Court.  (See LD 15, LD 14-LD 23.)  However, Respondent acknowledges that it appears that the state court might have passed on the merits of Petitioner's claim.  (Doc. 19, 36-37.) Respondent contends that in any event, Petitioner has not shown that

---

[1] The doctrine of procedural default is a specific application of the more general doctrine of independent state grounds.  It provides that when state court decision on a claim rests on a prisoner's violation of either a state procedural rule that bars adjudication of the case on the merits or a state substantive rule that is dispositive of the case, and the state law ground is independent of the federal question and adequate to support the judgment such that direct review in the United States Supreme Court would be barred, then the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice.  <u>Walker v. Martin</u>, - U.S. -, 131 S.Ct. 1120, 1127 (2011); <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991); <u>Bennett v. Mueller</u>, 322 F.3d 573, 580 (9th Cir. 2003); <u>Wells v. Maass</u>, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000).

the state court's denial of his claim was contrary to, or an unreasonable application of, any Supreme Court precedent.  (Doc. 19, 37.)

A procedural default is not jurisdictional.  <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997).  Instead, it proceeds from concerns of comity and federalism because a prisoner's failure to comply with a state's procedural requirement for presenting a federal claim has deprived the state courts of an opportunity to address the claim in the first instance.  <u>Coleman v. Thompson</u>, 501 U.S. at 831-32.  In a habeas case, it is not necessary that the issue of procedural bar be resolved if another issue is capable of being resolved against the petitioner.  <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997).  Likewise, the procedural default issue, which may necessitate determinations concerning cause and miscarriage of justice, may be more complex than the underlying issues in the case.  In such circumstances, it may make more sense to proceed to the merits.  <u>See</u> <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002).  The Court will proceed to consider the merits of Petitioner's claim in the interest of economy.

A fair trial in a fair tribunal is a basic requirement of due process.  <u>In re Murchison</u>, 349 U.S. 133, 136 (1955); see <u>Arizona v. Fulminante</u>, 499 U.S. 279, 309-10 (1991).  Fairness requires an absence of actual bias and of the probability of unfairness.  <u>In re Murchison</u>, 349 U.S. at 136.  Bias may be actual, or it may consist of the appearance of partiality in the absence of actual bias.  <u>Stivers v. Pierce</u>, 71 F.3d 732, 741 (9th Cir. 1995).  A showing that the adjudicator has prejudged, or reasonably appears to have

prejudged, an issue, is sufficient.  <u>Kenneally v. Lungren</u>, 967 F.2d 329, 333 (9th Cir. 1992).

However, there is a presumption of honesty and integrity on the part of decision makers.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 46-47 (1975).  Further, opinions formed by a judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).  Thus, stern and even short-tempered efforts at courtroom administration, and judicial remarks during the course of a trial that are critical, disapproving, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  <u>Id.</u> at 555-56.  Likewise, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women... sometimes display" do not establish bias.  <u>Id.</u>

Here, there is no basis for concluding that any bias or prejudice entered into, or had any effect on, the judge's rulings. The fact that the trial court may have made a procedural error concerning the setting of restitution or entered numerous rulings against Petitioner in the course of motion proceedings does not overcome the presumption where, as here, the trial court considered the pertinent pleadings and papers, held hearings on Petitioner's various motions, and made appropriate rulings.  (RT 1-10, 12-24, 220-29, 302; CT 36, 132 147, 177.)  With respect to the motion for bail pending appeal, the trial court had presided over all the evidence admitted at trial and had sentenced Petitioner to a doubled

11

middle term.  In sentencing Petitioner, the court had relied on the
vulnerability of the victim, the infliction of minor physical but
considerable emotional injury, the absence of any provocation,
Petitioner's active participation, Petitioner's failure to express
remorse, and the danger that the court concluded that Petitioner
presented to the public safety.  (RT 306.)  It thus was not
unreasonable after conviction and sentence for the court to inform
Petitioner and his counsel with respect to the application for bail
on appeal that Petitioner would have to show the court why
Petitioner did not present a danger to society.  (Doc. 1, 57-67.)
In denying bail, the trial court expressly relied on 1) the fact
that the violent commitment offense had occurred only several days
after Petitioner had been released from custody, and 2) Petitioner's
long criminal history.  (Id. at 67.)

    In summary, Petitioner has not shown that the trial court
prejudged the case or reasonably appeared to have prejudged the
case.  Petitioner has not rebutted the presumption of regularity.
Whether the claim is judged under the deferential standard of
§ 2254(d) or under the more demanding standard of de novo review,
Petitioner has not shown a violation of his right to a fair and
impartial tribunal.  Cf. Knowles v. Mirzayance, 556 U.S. 111, 123-24
(2009).

    Accordingly, Petitioner's due process claim concerning a biased
tribunal will be denied.

    IV.  Prosecutorial Misconduct

    Petitioner argues that two prosecutors (Arno and Rees)
manipulated evidence, coerced witnesses, and knowingly presented the
false testimony of witnesses by 1) questioning whether photographic

12

exhibit number 1 was authentic and declining to vouch for its authenticity, and 2) presenting the testimony of minor witnesses M and T, despite the existence of evidence showing that the witnesses' testimony was not based on personal knowledge and thus was inadmissible hearsay.  (Doc. 1, 19-20.)  The evidence on which Petitioner relies includes a pretrial statement of M indicating that she did not recall seeing the striking of the victim, and preliminary hearing testimony of B, the victim, that after the attack, M and T had asked her what happened, and in response the victim had told them.  Petitioner argues that the prosecution's failure to correct the false testimony of M and T denied Petitioner his right to due process of law protected by the Sixth and Fourteenth Amendments.  (Id. at 20, 38-41.)  Petitioner asserts that the prosecutors coerced the victim to testify that she was injured when at the preliminary hearing she in fact had testified that the only marks on her face were under her ear; when asked if she had a bump somewhere, she said she did on her forehead.  (CT 18.)  Petitioner alleges that none of the photographic evidence shows any bruises.

The SCSC denied habeas relief on this claim because an appeal was still pending; it then denied a later petition as successive and as raising a claim that could have been raised on appeal.  (LD 7-LD 10.)

A.   Background

A supplemental police report of Detective Dodge documents interviews of the minor witnesses conducted at their junior high school.  T stated to Detective Dodge that he awoke in his bedroom when someone kicked his bed; he saw B, the victim, sitting up, and

13

he saw Petitioner standing over the victim and punching her in the head.  (Doc. 1, 48.)  At trial, T testified that he saw Petitioner hitting B on the side of her face near her ear.  (RT 88.)

M, T's sister, reported to Detective Hodge that she awoke to the sound of someone screaming.  She then saw Petitioner standing above B, who was sitting up, covering her face.  (Doc. 1, 49.) Although M recalled seeing Petitioner standing over the victim, she did not recall any punching.  (Id. at 46-50.)  At trial, M testified that she awoke because B was screaming.  (RT 93-94.)  She then saw B being struck on her head; then someone ran out of the room and closed the door.  (Id. at 94.)  M recalled seeing bruises on B's face the next day.  M was cross-examined with respect to her statements at trial.  (Id. at 95-96.)

B.  Analysis

It is an established principle that due process is violated by a prosecutor's knowing use of false testimony, or failure to correct testimony known to be false, in order to secure a conviction.  Napue v. Illinois, 360 U.S. 264, 269 (1959); Pyle v. Kansas, 317 U.S. 213, 215-216 (1942).

Likewise, it is clearly established federal law within the meaning of § 2254(d)(1) that a prosecutor's improper conduct violates the Constitution only if it so infects the trial with unfairness as to make the resulting conviction a denial of due process.  Parker v. Matthews, – U.S. –, 132 S.Ct. 2148, 2153 (2012) (per curiam); see, Darden v. Wainwright, 477 U.S. 168, 181 (1986); Comer v. Schriro, 480 F.3d 960, 988 (9th Cir. 2007).  Prosecutorial

14

misconduct deprives the defendant of a fair trial as guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant.  United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir. 1988) (citing Smith v. Phillips, 455 U.S. 209, 219 (1982)).  The standard of review of claims concerning prosecutorial misconduct in proceedings pursuant to § 2254 is the narrow standard of due process, and not the broad exercise of supervisory power; improper argument does not, per se, violate a defendant's constitutional rights.  Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (citing Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996)).  This Court must thus determine whether the alleged misconduct has rendered a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. at 183.  It must be determined whether the prosecutor's actions constituted misconduct, and whether the conduct violated Petitioner's right to due process of law.  Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

Further, to grant habeas relief, this Court must conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Parker v. Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767-87).  In addition, the standard of Darden v. Wainwright is a very general one that leaves courts with more leeway in reaching outcomes in case-by-case

15

determinations.   Parker v. Matthews, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).   In determining whether remarks in argument rendered a trial fundamentally unfair, a court must judge the remarks in the context of the entire proceeding in order to determine whether the argument influenced the jury's decision.   Boyde v. California, 494 U.S. 370, 385 (1990); Darden v. Wainwright, 477 U.S. at 179-82.   In Darden, the Court considered whether the prosecutor manipulated or misstated evidence, whether specific rights of the accused were implicated, the context of the remarks in light of both parties' arguments, the instructions given by the trial court, and the weight of the evidence.   Darden, 477 U.S. at 179-82.

Here, the record does not support Petitioner's allegation that the prosecutors knowingly presented the false testimony of T.  This is because T's statements and testimony are essentially internally consistent and are generally consistent with the testimony of the victim; thus, presenting T's testimony would not provide a basis for a finding of knowingly presenting perjured testimony.

M's pretrial statement of failure to recall punching may be considered to be inconsistent with her testimony that she observed striking on the head.  However, this does not necessarily support a conclusion of knowing use of false testimony.  The pretrial statements of M on the one hand, and her trial testimony on the other, were otherwise essentially consistent.  There is no evidence

16

that the child's failure of recollection was a prevarication as distinct from a genuine failure of recollection concerning a traumatic event.  The inconsistency was the subject of cross-examination as well as comment in closing argument by the prosecutor, who expressly mentioned the inconsistency of M's statements concerning seeing the striking of the victim and noted that the children's stories were not absolutely perfect.  (RT 147-48.)

Further, in view of the weight of the evidence, including the victim's specific testimony regarding the injuries inflicted by Petitioner, any alleged misconduct was harmless because it was not of a nature or stature to influence the jury's verdict or render the trial fundamentally unfair.  Whether the claim is judged under the deferential standard of § 2254(d) or under the more demanding standard of de novo review, Petitioner has not shown a violation of his right to due process and a fair trial by the prosecutor's presentation of witnesses.  Cf. Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009).  Thus, the claim will be denied.

Insofar as Petitioner challenges the authenticity of photographic exhibits 2 through 4, Petitioner's claim has been dismissed without leave to amend as a state law claim.

V.   Sentencing Issues

Petitioner raises multiple issues relating to his sentence.

A.   Dismissal of State Law Claims

To the extent that Petitioner challenges the sentencing court's

failure to grant his motion to strike a prior conviction or the court's doubling of his sentence under California law based on a non-contest plea to an offense which Petitioner argues did not meet the statutory criteria for doubling, Petitioner's claims have been dismissed without leave to amend.  These claims are based solely on state law.

### B.   Challenge to Prior Conviction

Petitioner alleges that his fair trial rights were violated by the use of a 1999 conviction of attempted robbery (Cal. Pen. Code §§ 664 and 211) to enhance his sentence on the current commitment offense.  Petitioner alleges that before he entered his no-contest plea to the attempted robbery charge, he did not intelligently and fully understand or waive his rights; thus, the plea agreement was invalid for purposes of increasing his current sentence.  (Doc. 1 at 6, 10, 17.)  Petitioner raised this claim in a habeas petition before the SCSC, which denied it because it was successive and was not raised on appeal (LD 9-10); he later raised it before the Court of Appeal of the State of California, Fifth Appellate District (CCA) (LD 16), which denied the claim summarily (LD 17), as did the California Supreme Court (CSC) (LD 18-19).

Review of pre-plea issues is limited by the entry of a guilty plea.  In Tollett v. Henderson, 411 U.S. 258, 266-67 (1973), the Court held that the petitioner's guilty plea to first degree murder, based on the advice of counsel, foreclosed any independent inquiry in federal habeas corpus proceedings into the merits of a claim of unconstitutional racial discrimination in the selection of the grand jury that returned the indictment unless the petitioner demonstrated

18

that the advice regarding the plea was not within the range of

competence demanded of attorneys in criminal cases.   Id. at 266-67.

The Court stated the following:

> We hold that after a criminal defendant pleads guilty, on
> the advice of counsel, he is not automatically entitled to
> federal collateral relief on proof that the indicting
> grand jury was unconstitutionally selected. The focus of
> federal habeas inquiry is the nature of the advice and the
> voluntariness of the plea, not the existence as such of an
> antecedent constitutional infirmity. A state prisoner
> must, of course, prove that some constitutional infirmity
> occurred in the proceedings. But the inquiry does not end
> at that point, as the Court of Appeals apparently thought.
> If a prisoner pleads guilty on the advice of counsel, he
> must demonstrate that the advice was not 'within the range
> of competence demanded of attorneys in criminal cases,'
> McMann v. Richardson, supra, 397 U.S. at 771, 90 S.Ct. at
> 1449. Counsel's failure to evaluate properly facts giving
> rise to a constitutional claim, or his failure properly to
> inform himself of facts that would have shown the
> existence of a constitutional claim, might in particular
> fact situations meet this standard of proof. Thus, while
> claims of prior constitutional deprivation may play a part
> in evaluating the advice rendered by counsel, they are not
> themselves independent grounds for federal collateral
> relief.
>
> We thus reaffirm the principle recognized in the Brady
> trilogy: a guilty plea represents a break in the chain of
> events which has preceded it in the criminal process. When
> a criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is
> charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may
> only attack the voluntary and intelligent character of the
> guilty plea by showing that the advice he received from
> counsel was not within the standards set forth in McMann.

Tollett, 411 U.S. 266-67.

Further, where a petitioner's state court conviction is later

used to enhance a criminal sentence, the petitioner generally may

not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained unless in the proceeding resulting in the prior conviction there was a failure to appoint counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963).  Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001).  Where the prior conviction is no longer open to direct or collateral attack in its own right because the defendant either failed to pursue those remedies while they were available or pursued them unsuccessfully, relief by way of 28 U.S.C. § 2254 is unavailable.  Id.  This is because of the need for finality of convictions and other concerns related to the administration of justice based on the substantially diminishing likelihood that state court records and transcripts of prior convictions will be retained and will remain accessible for review. Id.

Thus, Petitioner's claims concerning the validity of the plea that resulted in the prior conviction do not present a basis for relief in this proceeding.

To the extent Petitioner claims the trial court had a duty to re-confirm that his prior plea was knowing and voluntary before using the resulting conviction to enhance the current sentence, Petitioner fails to support this claim with any clearly established federal law.

C.  Cruel and Unusual Punishment

Petitioner alleges that using Cal. Pen. Code §§ 667(b)-(i) and 1170.12 to double his sentence for his non-violent and non-serious felony from four to eight years violates his right to be free from cruel and unusual punishment protected by the Eighth and Fourteenth

20

Amendments.  (Doc. 1 at 17-18.)  This claim was denied summarily by the CCA and the CSC without a statement of reasoning or citation of authority.  (LD 16-19.)

### 1.  Background

Evidence in the trial record reflects that Petitioner opened the door to the room where B was and threw a pill bottle at her, hitting her somewhere around her leg but below her waist. (RT 47-48.)  Petitioner placed his hand over B's mouth and repeatedly told her to shut up.  (Id. at 50.)  B struggled to get to her knees, and Petitioner repeatedly hit her in the face with his hand, which the victim believed was closed.  (Id. at 50-51.)  During the struggle, B reached for help and scratched the face of T, who was asleep on the bed next to hers.  (Id. at 51.)  Petitioner then constantly hit B with a closed fist on her face near the ear and jawline; B covered her face with her hands with clenched fists at her hairline level. Petitioner departed as T and M were awakening.  (Id. at 51-52, 86, 94.)

The record shows that Petitioner has a long history of criminality.  As a juvenile, Petitioner was initially made a ward of the court for having committed burglary.  (CT 161.)  Wardship was continued for approximately five years following sustained petitions for battery, receiving stolen property, unlawfully taking a vehicle, engaging in fraudulent activity, and two separate burglaries.  (Id. at 161.)  As an adult, Petitioner was convicted for resisting a peace officer, receiving stolen property, attempted robbery, assault with a deadly weapon or by means of force likely to produce great bodily injury, evading a pursuing peace officer, hit-and-run driving, and possessing a device with which to consume drugs or

21

1  alcohol in a state prison.  (Id. at 161-62.)  Petitioner also

2  violated the terms and conditions of parole seven times.  (Id. at

3  162.)  He had been paroled on October 6, 2008, and he committed the

4  instant offense just three days later on October 9, 2008.  (Id. at

5  162.)

6      A transcript of the sentencing proceedings reflects that the

7  trial court concluded that the offense was committed without

8  provocation against a young, credible, and vulnerable victim, and it

9  resulted in insubstantial physical injuries but substantial

10  emotional injuries based on the mother's victim impact statement;

11  Petitioner was dangerous and had expressed no remorse.  (RT 305-06.)

12  The court denied bail on appeal after the prosecutor argued that the

13  offense had occurred after Petitioner had been out of custody for

14  only three days, the offense was violent, and Petitioner had a long

15  history of criminal offenses.  (RT 360-61.)

16              2.  Analysis

17      A criminal sentence that is "grossly disproportionate" to the

18  crime for which a defendant is convicted may violate the Eighth

19  Amendment.  Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Harmelin v.

20  Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring);

21  Rummel v. Estelle, 445 U.S. 263, 271 (1980).  Outside of the capital

22  punishment context, the Eighth Amendment prohibits only sentences

23  that are extreme and grossly disproportionate to the crime.  United

24  States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin

25  v. Michigan, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)).

26  Such instances are "exceedingly rare" and occur in only "extreme"

27  cases.  Lockyer v. Andrade, 538 U.S. at 72 73; Rummel, 445 U.S. at

28  272.  So long as a sentence does not exceed statutory maximums, it

will not be considered cruel and unusual punishment under the Eighth Amendment.  See United States v. Mejia Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The decisions of the Supreme Court confirm that the Eighth Amendment does not disturb the authority of a state to protect the public by adopting a sentencing scheme that imposes longer sentences on recidivists who have suffered a serious prior felony conviction. See Ewing v. California, 538 U.S. 11, 25 (2003) (upholding a sentence of twenty-five years to life for a recidivist convicted of grand theft); Lockyer v. Andrade, 538 U.S. 63, 66-67, 73-76 (2003) (upholding two consecutive terms of twenty-five years to life and denying habeas relief to an offender convicted of theft of videotapes worth approximately $150 with prior offenses that included first-degree burglary, transportation of marijuana, and escape from prison); Rummel, 445 U.S. at 284 85 (upholding a sentence of life with the possibility of parole for a recidivist convicted of fraudulently using a credit card for $80, passing a forged check for $28.36, and obtaining $120.75 under false pretenses); see Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding a sentence of twenty-five years to life for possession of .036 grams of cocaine base where the petitioner had served multiple prior prison terms with prior convictions of offenses that involved violence and crimes against the person). Likewise, the Court has affirmed severe sentences for controlled substance violations.  See Harmelin v. Michigan, 501 U.S. at 962-64 (1990) (upholding a sentence of life without the possibility of parole for a defendant convicted of possessing more than 650 grams

23

1  of cocaine, although it was his first felony offense).

2      Here, Petitioner's determinate nine-year sentence is

3  considerably shorter than the sentences of fifty years to life in

4  Andrade and twenty-five years to life in Ewing.  Further,

5  Petitioner's offense involved injury to the person and victimization

6  of a minor.  In addition, Petitioner's significant history of

7  continuing criminality is appropriately addressed by California's

8  recidivist statute.  In light of the limited range of

9  disproportionate sentences recognized as Eighth Amendment violations

10  under Supreme Court authority, and considering the nature of

11  Petitioner's commitment offense, Petitioner's prior convictions and

12  long history of serious criminality involving both violent and

13  acquisitive offenses, it would not be objectively unreasonably for a

14  fairminded jurist to conclude that Petitioner's sentence was not

15  disproportionate and did not offend the Eighth and Fourteenth

16  Amendments.

17      Accordingly, Petitioner's claim of cruel and unusual punishment

18  will be denied.

19      VI.   Ineffective Assistance of Counsel

20      Petitioner alleges that multiple omissions of his trial counsel

21  constituted the ineffective assistance of counsel (IAC).  Although

22  Respondent argues that Petitioner's failure properly to present most

23  of his IAC claims to the state court in a petition for review has

24  resulted in a forfeiture of all of his IAC claims except for one

25  relating to mitigation of sentence, Respondent also addresses the

26  claims on the merits.  In the interest of efficiency, the Court will

27  address all Petitioner's IAC claims.

28  ///

A. <u>Standard of Review</u>

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Premo v. Moore</u>, - U.S. -, 131 S.Ct. 733, 737-38 (2011); <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-94 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).

With respect to this Court's review of a state court's decision concerning a claim of ineffective assistance of counsel, the Supreme Court has set forth the standard of decision as follows:

> To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." <u>Knowles v. Mirzayance</u>, 556 U.S. --,--,129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing this standard and its relationship to AEDPA, the Court today in <u>Richter</u>, -- U.S., at -- - --, 131 S.Ct. 770, gives the following explanation:

>> "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [<u>Strickland</u>,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption'

25

that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...

" 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. --, -- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689–690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application
of Strickland was unreasonable under § 2254(d)
is all the more difficult. The standards created
by Strickland and § 2254(d) are both 'highly
deferential,' id., at 689 [104 S.Ct. 2052];
Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117
S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the
two apply in tandem, review is 'doubly' so,
Knowles, 556 U.S., at ----, 129 S.Ct., at 1420.
The Strickland standard is a general one, so the
range of reasonable applications is substantial.
556 U.S., at ---- [129 S.Ct., at 1420]. Federal
habeas courts must guard against the danger of
equating unreasonableness under Strickland with
unreasonableness under § 2254(d). When § 2254(d)
applies, the question is not whether counsel's
actions were reasonable. The question is whether
there is any reasonable argument that counsel
satisfied Strickland's deferential standard."

Premo v. Moore, 131 S.Ct. at 739-40 (quoting Harrington v. Richter,

131 S.Ct. 770 (2011)).

B.   Failure to Confer with Petitioner

Petitioner alleges that his trial counsel failed to confer with

him adequately before trial, having visited Petitioner only once in

the nine months preceding the trial.  (Pet., doc. 1 at 11.)  With

respect to this generalized claim of failure to confer, Petitioner

has not shown what information would have been exchanged, how a

general failure to exchange information about the crime would have

had any effect on the defense's presentation of evidence or argument

at trial, or how failure to communicate before trial would have

influenced the trier of fact.  Even if the claim is reviewed de

novo, the dearth of information does not overcome the strong

presumption that counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional

judgment required by Strickland.  Cf. Burt v. Titlow, - U.S. -, 134

27

S.Ct. 10, 17 (2013) (quoting <u>Strickland</u>, 466 U.S. at 690).

Accordingly, Petitioner is not entitled to relief on this claim.

C.   <u>Failure to Present the Testimony of Witnesses</u>

Petitioner alleges that his counsel failed to subpoena and present the testimony of Adam Tafoya and Stacey, whom Petitioner characterizes as two crucial witnesses; instead, counsel simply "Googled" the names.  (Doc. 37 at 14; doc. 1 at 12.)  Petitioner asserts that the witnesses were mentioned in statements made by other witnesses and in police reports, and he characterizes them as "eyewitnesses" who could have established that Petitioner did not inflict injury on the victim.  (Doc. 37 at 31-32, 14.)

Reference to the police report that Petitioner submitted as an attachment to the petition reveals that Petitioner came to the residence of T and M on the evening of the offense with his friends, Adam and Stacey.  Adam and Stacey then departed.  Although Petitioner was a friend of the father of T and M, the father instructed Petitioner to leave because he himself had to depart.  However, it may be inferred that Petitioner had obtained a key to the residence before he left and used the key to re-enter later.  T and M separately informed police that Adam and Stacey had left earlier, even before their father or Petitioner departed.  There is no indication that either Adam or Stacey was present at the time of the assault or in the victim's presence thereafter.  (Doc. 1, 47-49.)

Although Petitioner generally alleges that Adam and Stacey would testify on his behalf, Petitioner has not shown that either Adam or Stacey was a witness to either any of the conduct

28

constituting the offense or the extent of the injuries manifested by the victim after the offense.  Further, Petitioner has not shown that the witnesses were available to testify.  Petitioner has not shown that if counsel had presented Adam and Stacey as witnesses, they would have had any information that could have changed the defense or that would have had any effect or influence on the verdict.  Even if the claim is reviewed de novo, Petitioner has not established that counsel acted in an objectively unreasonable manner; however, even assuming that showing had been made, Petitioner has not shown that he suffered any prejudice.

Thus, Petitioner is not entitled to relief on this claim.

D.   Failure to Investigate and Develop Strategy or Tactics

Petitioner alleges that counsel refused to collaborate in order to develop trial strategy and tactics based on facts instead of simply hoping that the jury believed that Petitioner did not commit the crime.  (Doc. 1, 12.)  Petitioner further alleges that counsel failed to perform unspecified tasks relating to investigating the case.  (Id.)  Petitioner alleges that counsel relied on discovery documents and the complaint, and he failed to conduct any independent investigation or attempt to interview the prosecution witnesses who testified at trial.  (Id. at 16.)

Petitioner has not set forth any facts that would establish or even suggest that counsel failed to discover any useful information or evidence.  It is unclear whether counsel could have interviewed any of the three juvenile witnesses, and it is possible that counsel could have made a tactical decision not to interview them in light of the fact that significant inconsistencies, such as that relating to M's observation of striking, were already present in the record.

29

It is unknown what any further investigation could have uncovered.

With respect to strategy or tactics, Petitioner's trial counsel called only one witness, Detective Sean Dodge, who testified to his pretrial interview of M in which M made a statement that she did not see Petitioner hit B, which conflicted with her later trial testimony.  (RT 111-13.)  Counsel argued to the jury that each of the three eyewitnesses was a juvenile, the witnesses had discussed the events with each other, the witnesses may have lacked personal knowledge of the key events, and there were still numerous discrepancies in their testimony.  (Id. at 134-39.)  Counsel argued that Petitioner should be found guilty of simple battery but was not guilty of the more serious charges.  (Id. at 137-38.)

Here, the evidence that Petitioner had assaulted the victim came from multiple witnesses who lacked any apparent motive to fabricate.  Thus, the evidence that Petitioner engaged in some sort of attack on the victim was strong, and Petitioner faced significant impeachment with his criminal history if he should testify.  In light of the limited extent of the physical injuries, a fairminded jurist could conclude that the strategy of challenging the severity of the injuries was not unreasonable.  See United States v. Fredman, 390 F.3d 1153, 1158 (9th Cir. 2004) (recognizing as reasonable counsel's tactic of admitting drug activity but contesting involvement in the charged conspiracy).  Even if the claim is reviewed de novo, Petitioner has not shown that counsel's strategy and argument were objectively unreasonable; further, in light of the strong evidence of Petitioner's involvement in an assault, Petitioner has not shown that he suffered any prejudice.

Thus, Petitioner is not entitled to relief on this claim.

E.   Failure to Introduce a Photograph

Petitioner alleges that counsel failed to object to the omission of, and failed to introduce, favorable evidence, namely, photographic exhibit number 1, which Petitioner alleges controverts the allegations of serious injury and prevents establishment of the "traumatic condition factor."  (Doc. 1, 13.)

Four photographs of the victim were introduced, but only three, exhibits 2 through 4, were moved into evidence.  (CT 79; Supp.CT.) All four photographs were taken on the same occasion when someone came out to the victim's home the day after the offense. (RT 54.) Exhibit 1 reflected the victim; exhibits 2 and 4 reflected the bruise on the side of her face that Petitioner inflicted (id. at 57-58); exhibit 3 showed the bump on top of the victim's head (id. at 58).  The victim testified that both exhibits 2 and 3 fairly reflected what her face looked like after having been struck by Petitioner.  (Id. at 58.)  The three photographs that were admitted showed their subject matter in more detail, whereas exhibit 1 showed Petitioner's upper torso and face.  (Supp.CT.)

Under these circumstances, because of exhibit 1's lack of focus and detail, counsel was objectively reasonable in concluding that exhibit 1 was simply not probative of the extent of the injury and that its usefulness was limited to authentication, and/or that basing an argument on the details of a photograph taken at a distance would not have been persuasive in light of the more specific evidence already before the trier of fact.

Further, the photographs that were introduced reflected the victim's acne condition and thus permitted defense counsel to argue that the redness on the victim's face was the result of her acne and

31

not an assault.  (RT 135.)  Petitioner has not shown that a decision
not to admit the photograph affected the outcome of the proceeding.

Even if the claim is reviewed de novo, the Court concludes that
in light of the failure of Petitioner to show that failure to
introduce exhibit 1 was objectively unreasonable conduct or that its
omission from evidence was prejudicial, Petitioner is not entitled
to relief on this claim.

### F.  Failure to Exclude Testimony of M and T

Petitioner alleges that counsel refused to object to, or to
file an in limine motion to exclude, the testimony of T and M, which
should not have been admitted because 1) before trial on October 22,
2008, M stated to law enforcement officers that she did not recall
seeing Petitioner punching the victim, and 2) the victim testified
at the preliminary hearing that T and M kept asking her what had
happened, and she told them.  Petitioner argues that this evidence
establishes M's and T's lack of personal knowledge of the offense
and shows that the testimony given was false and thus objectionable.
(Doc. 1, 13-14.)

Here, insofar as Petitioner contends that the testimony of M
and/or T was demonstrably perjured, the Court has previously
addressed the related contention of prosecutorial misconduct in
presenting the testimony.  The record reflects not the presentation
of false testimony with knowledge of the falsity, but rather
admission of eyewitness testimony that contained some
inconsistencies.

With respect to Petitioner's IAC claim relating to admission of
the testimony, it may not be disputed that testimony regarding the
perpetration of the offense from T and M, persons who were present

32

during the commission of the crime and who asserted that they had personal knowledge of the events constituting the body of the offense, was relevant.  With respect to the admission of relevant evidence contended to be unreliable, the primary federal safeguards are provided by the Sixth Amendment's rights to counsel, compulsory process to obtain defense witnesses, and confrontation and cross-examination of prosecution witnesses; otherwise, admission of evidence in state trials is ordinarily governed by state law.  Perry v. New Hampshire, 132 S.Ct at 723 (determining that the Due Process Clause does not require a trial judge to conduct a preliminary assessment of the reliability of eyewitness identification made under suggestive circumstances not arranged by the police).  The reliability of relevant testimony typically falls within the province of the jury to determine.  Id. at 728-29.  Absent improper police conduct or other state action, it is sufficient to test the reliability of evidence through the normal procedures, including the right to counsel and cross-examination, protective rules of evidence, the requirement of proof of guilt beyond a reasonable doubt, and jury instructions.  Id.

Here, at trial, the victim testified that after Petitioner left, she told M and T what Petitioner had done to her.  (RT 53.)  The eyewitnesses testified to what they saw and heard, purporting to have personal knowledge of the subject matter of their testimony.  (Id. at 79-86, 92-95.)  Each eyewitness admitted that the victim later recounted Petitioner's attack.  (Id. at 86, 94-95.)

The witnesses' questioning the victim for an explanation of what happened does not necessarily indicate that the witnesses lacked personal knowledge of the offense; rather, it could indicate

33

nothing more than that the witnesses sought to understand what they had seen.  Likewise, the post-event discussion did not render the eyewitnesses incompetent to testify regarding their observations. During the examination of witnesses, defense counsel repeatedly objected to hearsay and nonresponsive testimony, and the objections were mainly sustained.  (RT 82-85.)  The evidence was tested by defense counsel's cross-examination and was the subject of an argument that the jury had been presented with only a "collective knowledge."  (Id. at 87-91, 95-97, 138.)  Thus, counsel undertook reasonable measures to impeach the prosecution witnesses.

The failure to make a motion which would not have been successful or was otherwise futile does not constitute ineffective assistance of counsel.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).  Here, no basis for exclusion of the evidence appears. Further, counsel engaged in customary advocacy by cross-examining the witnesses, establishing inconsistencies, and focusing the jury's argument on the weaknesses in the witnesses' testimony.  Even if the claim is reviewed de novo, Petitioner has not shown that his trial counsel's performance with respect to the juvenile witnesses was objectively unreasonable or that Petitioner suffered any prejudice as a result.

Therefore, Petitioner is not entitled to relief on this claim.

G.   Withdrawal of Defenses

Petitioner alleges that counsel failed to perform in an unspecified manner which withdrew a crucial but unspecified defense or defenses such that it was reasonably probable that absent such ineffective assistance, a more favorable verdict would have ensued. (Doc. 1, 14.)

34

Petitioner's generalized allegations are not sufficient to overcome the presumption that counsel acted reasonably.  Even if the claim is reviewed de novo, Petitioner has not shown that Petitioner's counsel's conduct was objectively unreasonable or that Petitioner suffered any prejudice as a result.

Therefore, Petitioner is not entitled to relief on this generalized claim.

H.  Sentencing

Petitioner alleges that his counsel was ineffective at sentencing because he failed to object to the aggravating factors argued by the prosecution and failed to introduce evidence of mitigating factors affecting Petitioner's moral culpability, including Petitioner's medical, educational, vocational, social, correctional, and family history.  (Doc. 1 at 14-15, 32.)  Counsel failed to investigate Petitioner's background; an investigation would have revealed 1) at an unspecified time, Petitioner had been diagnosed with bipolar II disorder, was taking psychotropic medications, and was under a psychiatrist's care; 2) a scratch and redness were the victim's only injuries, which even the trial court characterized as insubstantial; 3) Petitioner suffered extreme stress due to hospitalization of his mother for COPD, the poor mental and physical health of his grandmother, and the terminal cancer from which his grandfather suffered; 4) Petitioner had not been convicted of a serious felony since February 1999; and 5) Petitioner suffered hallucinations and permanent problems from chronic methamphetamine abuse concurrently with his psychological problems.  (Id. at 15-16.)

The facts of Petitioner's offense and Petitioner's criminal

35

history have previously been summarized.

In _Strickland_, the Court expressly declined to consider the role of counsel in an ordinary sentencing proceeding, and it acknowledged that the sentencing context might require a different approach to the definition of constitutionally effective counsel. _Strickland_ 466 U.S. at 686-87.  It has been recognized in this circuit that since _Strickland_, the Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases.  _Daire v. Lattimore_, no. 12-55667, - F.3d -, 2015 WL 1259551, at *5 (9th Cir. March 19, 2015); _Davis v. Grigas_, 443 F.3d 1155, 1158 (9th Cir. 2006); _Cooper-Smith v. Palmateer_, 397 F.3d 1236, 1244 (9th Cir. 2005).

However, even assuming for the sake of argument that _Strickland_'s applicability is clearly established, Petitioner does not prevail under either _de novo_ review or the standard of review imposed by the AEDPA.  Petitioner does not set forth specific facts showing the nature and effect of his symptoms or indicating how his condition might have had any effect on his culpability of the commitment offense or the appropriateness of any sentencing decision.  Evidence of Petitioner's mental state in the record includes the report of clinical psychologist Philip S. Trompetter, Ph.D., dated February 7, 2009, rendered in connection with mental competence proceedings in the trial court.  Dr. Trompetter opined that Petitioner was competent.  His examination revealed a history and diagnosis of, as well as symptoms consistent with, bipolar II anxiety, which Trompetter described as a "mild mood disorder that does not reach the severity of symptoms of a Bipolar I Disorder." (Rept., CT unpaginated, post-page 218, at 2.)  Petitioner was first

36

diagnosed and medicated in 2001; although he reported extreme highs and lows of mood, racing thoughts, and distractibility, he had never been psychiatrically hospitalized.  Although he reported a history of alcohol abuse and chronic methamphetamine abuse, he had never been treated in a residential program for drug or alcohol abuse. (Id.)  Petitioner had been prescribed a number of psychotropic medications in the past year (Seroquel, Remeron, Trileptal, and Zyprexa), and he was prescribed medications and given a month's supply when released from prison in the first week of October 2008. (Id.)  Other than Petitioner's claim that he sometimes heard disparaging voices, Petitioner's mental status examination was completely normal; there was no evidence that his mood was substantially disordered.  (Id. at 2-3.)

Petitioner argued that trial counsel failed to offer any evidence of mitigation at sentencing, and he failed to rebut the sentencing recommendation.  With respect to counsel's failure to offer evidence of mental condition or emotional circumstances in mitigation, Petitioner has not alleged specific facts warranting a conclusion that any of the proposed factors in mitigation actually influenced or affected Petitioner with respect to his commission of the crime or otherwise reduced Petitioner's culpability. Petitioner's arguments are conclusory.  Petitioner was diagnosed and was receiving medication at the time of the offense and nevertheless offended; counsel might have decided to forego the evidence because it would warrant a conclusion that despite treatment and control of Petitioner's mild mood disorder, his recidivist tendencies were independent and resulted in continued criminality.  Cf. Daire v. Lattimore, 2015 WL 1259551, at *5-*6.

Further, there were five or six aggravating factors that were relied on by the trial court in sentencing Petitioner, including the vulnerability of the victim, infliction of emotional injury upon the victim, active participation in the offense, an absence of provocation by the victim, lack of any expression of remorse, and danger to society.  (RT 306.)  It could reasonably be concluded that a mental condition exacerbated by the stress of family illness might not outweigh the multiple factors in aggravation of the term that were relied on by the trial court.

Counsel addressed the sentencing recommendation by arguing for the striking of a prior conviction, which would have reduced the sentence by a year.  (RT 305.)  See, Cal. Pen. Code § 667.5(b). Further, when the Court heard Petitioner's motion to strike Petitioner's prior robbery conviction, counsel argued that the prior robbery was not of a serious nature.  (RT 221.)  The granting of this motion could have reduced the sentence up to five years.  (Cal. Pen. Code § 667(a), (d).)  The argument for a mitigated term would have netted at most two years pursuant to Cal. Pen. Code § 273d(a)) (providing for lower, middle, and upper terms of two, four, and six years, respectively).  It would not have been objectively unreasonable for counsel to have concluded that the argument in favor of mitigation was weak, but the argument minimizing prior misconduct was strong and potentially productive.  Even if the claim is reviewed de novo, Petitioner has not shown that any omission of counsel was objectively unreasonable or resulted in any prejudice to Petitioner.

In summary, the Court concludes that Petitioner is not entitled to relief on this claim.

38

I.   Cumulative Error

Petitioner argues that the cumulative effect of counsel's errors was to fail to develop a defense of self-defense and imperfect self-defense.  (Doc. 1 at 32.)

Here, Petitioner's identity was known to the victim and the two juvenile witnesses.  The victim's testimony reflected her personal knowledge of the attack and contained facts adequate to support a conclusion that Petitioner had attacked the child as she slept, hit her repeatedly, retreated only partially, and remained in in the residence feigning sleep.  Two witnesses testified to their observations of portions of the course of conduct that constituted the offense.  Petitioner, who had a history of committing offenses that involved violence and moral turpitude, inflicted violence upon the person of an under-age and particularly vulnerable victim only three days after he had been released on parole.  In light of the strength of the evidence, the combined omissions of counsel that are established by the evidence have not been shown to have rendered the proceedings fundamentally unfair or to have had any potential effect or influence on the verdict.

In summary, Petitioner's IAC claims will be denied.

Further, because the Court has now set forth its determination of the petition on the merits, Petitioner's request for a ruling, filed on August 15, 2014, will be dismissed as moot.

VII.   Request for Evidentiary Hearing

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts.  28 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  To obtain an evidentiary hearing in federal court under

39

the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief. Schriro v. Landrigan, 550 U.S. at 474.

The determination of entitlement to relief is, in turn, is limited by 28 U.S.C. § 2254(d)(1), which requires that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly established federal law. Schriro v. Landrigan, 550 U.S. at 474. Further, in analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

Thus, when a state court record precludes habeas relief under the limitations set forth in § 2254(d), a district court is not required to hold an evidentiary hearing. Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011) (citing Schriro v. Landrigan, 550 U.S. at 474). An evidentiary hearing may be granted with respect to a claim adjudicated on the merits in state court where the petitioner satisfies § 2254(d)(1), or where § 2254(d)(1) does not apply, such as where the claim was not adjudicated on the merits in state court. Cullen v. Pinholster, 131 S.Ct. at 1398, 1400-01.

An evidentiary hearing is not required where the state court record resolves the issues, refutes the application's factual allegations, or otherwise precludes habeas relief. Schriro v. Landrigan, 550 U.S. at 474. No evidentiary hearing is required for claims based on conclusory allegations. Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994). Likewise, an evidentiary hearing is not

1  required if the claim presents a purely legal question, there are no

2  disputed facts, or the state court has reliably found the relevant

3  facts.  Beardslee v. Woodford, 358 F.3d 560, 585-86 (9th Cir. 2004);

4  Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).

5      Here, the state court record precludes habeas relief pursuant

6  to § 2254(d).  Further, to the extent that § 2254(d) does not

7  preclude relief, then Petitioner has not alleged a colorable claim

8  by alleging facts which, if proved, would entitle him to relief.

9      Accordingly, Petitioner's motion for an evidentiary hearing

10  will be denied.

11      VIII.  Certificate of Appealability

12      Unless a circuit justice or judge issues a certificate of

13  appealability, an appeal may not be taken to the Court of Appeals

14  from the final order in a habeas proceeding in which the detention

15  complained of arises out of process issued by a state court.  28

16  U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336

17  (2003).  A district court must issue or deny a certificate of

18  appealability when it enters a final order adverse to the applicant.

19  Habeas Rule 11(a).

20      A certificate of appealability may issue only if the applicant

21  makes a substantial showing of the denial of a constitutional right.

22  § 2253(c)(2).  Under this standard, a petitioner must show that

23  reasonable jurists could debate whether the petition should have

24  been resolved in a different manner or that the issues presented

25  were adequate to deserve encouragement to proceed further.  Miller-

26  El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S.

27  473, 484 (2000)).  A certificate should issue if the Petitioner

28  shows that jurists of reason would find it debatable whether: (1)

41

the petition states a valid claim of the denial of a constitutional

right, and (2) the district court was correct in any procedural

ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

IX.  Disposition

In accordance with the foregoing analysis, it is ORDERED that:

1)  The petition for writ of habeas corpus is DENIED;

2)  Petitioner's motion for an evidentiary hearing is DENIED;

3)  The Clerk shall ENTER judgment for Respondent;

4)  Petitioner's motion for a ruling is DISMISSED as moot; and

5)  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **March 25, 2015**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE